# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**LAUREN R.,**[1]

      **Plaintiff,**

        **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**Case No. 2:20-cv-15611**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Lauren R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.      PROCEDURAL HISTORY

On February 1, 2018, Plaintiff filed her applications for disability insurance benefits and

supplemental security income, alleging that she has been disabled since February 8, 2017. R. 63,

73, 83, 92, 168–83. The applications were denied initially and upon reconsideration. R. 101–06,

108–13. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 114.

Administrative Law Judge Dennis O'Leary ("ALJ") held a hearing on October 7, 2019, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 31–62. In a

decision dated October 24, 2019, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from February 8, 2017, Plaintiff's alleged disability onset

date, through the date of that decision. R. 15–26. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on September 9,

2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

April 30, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 8.[3] On that same day, the case was reassigned to the undersigned. ECF No. 9. The matter is

ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the

plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not

have a severe impairment or combination of impairments, then the inquiry ends because the

plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or

combination of impairments has lasted or is expected to last for a continuous period of at least 12

months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because

the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 34 years old on her alleged disability onset date. R. 25. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 8, 2017, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff's back disorder, knee disorder, foot disorder, shoulder disorder, and obesity were severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 19–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a toll collector and data entry clerk. R. 24.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a telephone information clerk, an election clerk, and a call-out operator—existed in the national economy and could be performed by Plaintiff. R. 25–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 8, 2017, her alleged disability onset date, through the date of the decision. R. 26.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively,

for further proceedings. *Plaintiff's Moving Brief,* ECF No. 21. The Acting Commissioner takes

the position that her decision should be affirmed in its entirety because the ALJ's decision

correctly applied the governing legal standards, reflected consideration of the entire record, and

was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to*

*Local Civil Rule 9.1*, ECF No. 22.

## IV.  DISCUSSION

### A.   Obesity

Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity at steps three

and four of the sequential evaluation, arguing that the ALJ relied on mere boilerplate and

conclusory language. *Plaintiff's Moving Brief*, ECF No. 21, pp. 10–24. Plaintiff contends that the

ALJ's failure to meaningfully analyze her obesity violates controlling authority and that the

ALJ's decision precludes judicial review. *Id.* This Court disagrees.

In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of

Appeals for the Third Circuit has recognized that this action "did not eliminate obesity as a cause

of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p,

65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "Rather, the Commissioner has since

promulgated a series of SSRs, which indicate how obesity is to be considered under the listings."

*Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *9 (D.N.J. Oct. 27, 2022)

(citations omitted). The Commissioner initially promulgated SSR 00-3p, which "replaced an

automatic designation of obesity as a listed impairment, based on a claimant's height and weight,

with an individualized inquiry, focused on the combined effect of obesity and other severe

impairments afflicting the claimant[.]" *Diaz*, 577 F.3d at 503. "Although SSR 00-3p was

superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not

materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."). Most recently, SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019); *see also id.* at n.14 ("We will use this SSR beginning on its applicable date [of May 20, 2019]. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Other courts have observed that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how obesity should be analyzed[.]" *Heck v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck v. Comm'r of Soc. Sec.*, No. 1:20CV2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022) (collecting cases); *see also Huntley v. Kijakazi*, No. 1:20CV862, 2021 WL 5834406, at *8 (M.D.N.C. Dec. 9, 2021) (agreeing with the Commissioner that under either SSR 02-1p or SSR 19-2p, "'the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes any limitations' and is warned that 'the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity'") (citations omitted).

SSR 19-2p advises that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI

[medically determinable impairment]." *Id.* at *2. SSR 19-2p addresses the determination of

obesity as a severe impairment, as follows:

> When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. We find, however, that the impairment(s) is "not severe" if it does not significantly limit [a person's] physical or mental ability to do basic work activities.
>
> No specific weight or BMI establishes obesity as a "severe" or "not severe" impairment. Similarly, a medical source's descriptive terms for levels of obesity, such as "severe," "extreme," or "morbid," do not establish whether obesity is a severe impairment for disability program purposes. We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.

*Id.* at *3–4 (footnotes omitted). SSR 19-2p also specifically advises how to evaluate obesity

under the listings:

> Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.
>
> We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record.

*Id.* at *4. (footnotes omitted); *see also id.* at n.11 (citing 20 C.F.R. §§ 404.1526 and 416.926).

Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually

and in combination with her impairments, on her workplace function at step three and at every

subsequent step." *Diaz*, 577 F.3d at 504; *see also Abigail L.*, 2022 WL 16362468, at *10

("Although the parties do not dispute that SSR 19-2p rescinded and replaced its predecessor SSR

10

02-01p, the Commissioner fails to cite a single authority that challenges the applicability of *Diaz*'s meaningful review instruction. Notably, several courts in this district have continued to apply such guidance in the context of SSR 19-2p.") (collecting cases). "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505). Notably, a claimant must demonstrate "*how* [the claimant's] obesity . . . affect[s the claimant's] ability to perform basic work activities," not simply that it could impact such ability. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (affirming denial of benefits where the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original).

In the present case, the ALJ identified obesity as one of Plaintiff's severe impairments at step two of the sequential evaluation. R. 17. At step three, the ALJ noted that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairment." R. 18. When considering Plaintiff's obesity, the ALJ expressly referred to SSR 19-2p and concluded that Plaintiff's obesity, when considered in combination with her other impairments, neither met nor medically equaled any listing:

> As with regards to the claimant's obesity, although there is no specific medical listing regarding obesity, I have evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 19-2p, including the references in the listings contained in sections 1.00Q, 3.00I, and 4.00F. As SSR 19-2p states: "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case

11

record." Thus, I have fully considered obesity in the context of the overall record evidence in making this decision.

R. 18–19. The ALJ also considered at step three that Plaintiff did not meet, *inter alia*, listings related to Plaintiff's joint and spine impairments as follows:

> Listing 1.02, dysfunction of a major weight-bearing joint due to any cause, requires a condition characterized by: gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability); chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s); and findings using appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). These conditions must be met along with: (1) Involvement of one major peripheral weight -bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b or (2) Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c. The claimant's impairments do not meet these conditions. While the claimant has both ankle and knee impairments and uses a cane for ambulation, she still has one hand free for carrying. The record suggests the claimant lives independently and is able to care for her needs albeit with some difficulty as well as drive throughout the community to her appointments. While she reports bilateral shoulder pain, the record does not show any clinical limitations in the shoulders. There are also no complaints concerning the hands/wrists/fingers. There was no instability or reduced strength noted in the upper extremities (Exhibits 1F, 2F, 3F, 5F, 6F, 7F, 8F).

> The record does not show the claimant meets listing 1.04, as there is no evidence of a disorder of the spine resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight leg raising test. The record also does not show spinal arachnoiditis manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours. The record also does not show lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively. While the claimant has both ankle and knee impairments, a back impairment and uses a cane for ambulation, she still has one hand free for carrying. The record suggests the claimant lives independently and is able to care for her needs albeit with some difficulty as well as drive throughout the community to her appointments (Exhibits 1F, 2F, 3F, 5F, 6F, 7F, 8F).

*Id*. At step four, the ALJ specifically stated that he considered "all symptoms" and repeatedly referred to Plaintiff's obesity, particularly considering her obesity in connection with her

subjective complaints of pain in her back, joints, and ankles as well as her ability to ambulate—

albeit with a cane and sometimes with difficulty—along with normal strength in all muscle

groups and intact tone, sensation, and reflexes. R. 19–24. The ALJ also went on to expressly

state at step four that he considered Plaintiff's obesity by itself and in combination with other

impairments and explained why Plaintiff's obesity was not so severe as to be disabling as well as

how he factored in Plaintiff's obesity when crafting the RFC for sedentary work:[4]

> *With respect to the claimant's obesity, while same was not stated by any physician to be disabling, obesity was considered in terms of its possible effects on the claimant's ability to work. In the present case, the claimant's file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments, it has disabled her,* although weight loss has been suggested. As outlined above, the claimant was able to perform her activities of daily living and travel independently to appointments albeit the some difficulty (as outlined in the Function Report (Exhibit 3E)). The record shows her conditions have remained stable with no worsening and only conservative treatment. The record does not suggest any hospitalizations or emergency care. She also shows no atrophy, incoordination, tremors or deformities and has intact muscle tone, sensation and reflexes. Thus, the claimant's obesity is not, by itself, nor in conjunction with her other listed impairments, so severe as to prevent her from working.

R. 23 (emphasis added).

> *I find the claimant is limited to the demands of sedentary work, due to persistent pain in the bilateral knees and feet as well as her morbid obesity. Objective testing has shown tendonitis and bursitis in the feet, osteoarthritis in the knees as well as prior surgery on the right knee. The claimant has also been ambulating with a cane since her knee surgery in 2015. Clinical findings have shown pain with range of motion, crepitus and weakness in the knees and ankles. Her conditions are aggravated by morbid obesity. Ultimately, the record shows the claimant has reduced ability to perform prolonged standing/walking.* DDS also did not account for the claimant's continued reports of pain, which affect her concentration and ability to perform complex tasks.

R. 23–24 (emphasis added). Accordingly, the ALJ's discussion at step three properly considered

Plaintiff's obesity at step three and at subsequent steps when, after recognizing Plaintiff's obesity

---

[4] The RFC and its limitations are discussed in detail in the next section.

as a severe impairment, the ALJ recognized that he must also consider, when determining

Plaintiff's RFC, the effect of Plaintiff's obesity on her other impairments but found that none of

Plaintiff's impairments, whether considered singly or in combination —including Plaintiff's

musculoskeletal and joint impairments—met or equaled a listed impairment, and specifically and

in detail considered Plaintiff's musculoskeletal and joint impairments, intact sensation and

reflexes, 5/5 muscle strength, ability to take care of herself independently and travel

independently, and her ability to ambulate, despite some difficulty. *See id.*; *see also* SSR 19-2p;

*Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; *Jones*, 364 F.3d at 505 (stating that if

the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors

in reaching the conclusion that [the claimant] did not meet the requirements for any listing,"

"[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide

meaningful review of the step three determination"); *Abigail L.*, 2022 WL 16362468, at *10

(finding that, "notwithstanding the ALJ's scant analysis of Plaintiff's obesity at step three, the

ALJ's opinion, read in its entirety, permits meaningful review of Plaintiff's obesity"); *cf. Rivera*

*v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding that the ALJ's conclusory

statement in step three was harmless where, "in reviewing the voluminous medical evidence

available to us, we found abundant evidence supporting the position taken by the ALJ, and

comparatively little contradictory evidence"); *Steven James F. v. Comm'r of Soc. Sec.*, No. 1:20-

CV-14183-NLH, 2022 WL 2703009, at *4 (D.N.J. July 12, 2022) ("The fact that the ALJ did not

repeatedly cite to Plaintiff's obesity thereafter [after saying that he had considered the claimant's

obesity as required by SSR 19-2p] does not undermine the ALJ's decision as the ALJ is not

required to discuss every tidbit of evidence in the record. . . . Looking at the ALJ's opinion

holistically in light of the record as a whole, the Court is satisfied that the ALJ considered Plaintiff's obesity and applied the correct legal standard.").

Plaintiff, however, insists that the ALJ's consideration at step three is deficient, arguing that this Court, following the *Diaz* precedent, has remanded an action where the ALJ relied on boilerplate language similar to that used in this case. *Plaintiff's Moving Brief*, EECF No. 21 (pp. 18–21) (citing *Rodriguez v. Comm'r of Soc. Sec.*, No. 17-CV-9429 (CCC), 2019 WL 397983, at *4–5 (D.N.J. Jan. 30, 2019)). *Rodriguez*, however, is inapposite. As set forth in detail above, the ALJ in this case did not simply rely on conclusory assertions that he had considered Plaintiff's obesity in accordance with the regulations:  He explicitly discussed Plaintiff's obesity along with Plaintiff's other physical impairments through steps three and four, including the fact that no physician had found Plaintiff's obesity to be disabling, as well as evidence of intact sensation and reflexes, 5/5 muscle strength, ability to take care of herself independently and travel independently, and evidence of her ability to ambulate, albeit with some difficulty. R. 19–24. Based on this record, *Rodriguez* is distinguishable and does not warrant remand. *See id.*; *see also Alejandra D. v. Comm'r of Soc. Sec.*, No. CV 22-175 (CCC), 2023 WL 2609134, at *9–10 (D.N.J. Mar. 22, 2023) ("The ALJ's specific consideration of obesity in the context of these physical findings satisfied his obligation to 'meaningfully consider the effect of a claimant's obesity.'") (quoting *Diaz*, 577 F.3d at 504); *Lerner v. Comm'r of Soc. Sec.*, No. CV 21-4073 (CCC), 2022 WL 2666961, at *5 (D.N.J. July 8, 2022) (distinguishing *Rodriguez* and affirming denial of benefits where "the ALJ went beyond simply reporting that he analyzed obesity pursuant to the agency regulations" and "explicitly stated that he considered obesity in the context of the overall record[,]" "referenced Plaintiff's obesity throughout his sequential evaluation[,]" and noted the claimant's "capacity to walk, her muscle tone and strength, and the

fact that no physician determined her obesity to be disabling" and, "[t]herefore, unlike in *Rodriguez*, the ALJ here meaningfully considered Plaintiff's obesity and supported his determinations with substantial evidence").

In any event, "Plaintiff has not pointed to any evidence in the record indicating that obesity impacted her impairments such that the medical equivalency analysis would change or that she required additional RFC limitations due to her obesity." *Alejandra D.*, 2023 WL 2609134, at *10. *See generally Plaintiff's Moving Brief*, ECF No. 21, pp. 10–24; *see also Cosme v. Comm'r Soc. Sec.*, No. 20-2341, 2021 WL 776725, at *2 (3d Cir. Mar. 1, 2021) ("Cosme fails to identify how his obesity would affect the five-step-evaluation process beyond a mere generalized response that it would 'obviously negatively impact [his] COPD and back pain.' Like the *Rutherford* court, we conclude that remand is not required because Cosme has failed to demonstrate how consideration of his obesity would affect the outcome of the case.") (citations omitted); *Carter*, 805 F. App'x at 143; *Woodson*, 661 F. App'x at 765. To the extent that Plaintiff intends her citations to her subjective statements regarding her reduced ability to perform daily activities or limited ability to engage in hobbies undermines the ALJ's consideration of obesity at step three or step four, Plaintiff's citations are unavailing. As a preliminary matter, the ALJ explained why she properly discounted Plaintiff's subjective statements, a determination that Plaintiff does not apparently challenge. R. 20, 23. Moreover, Plaintiff does not even explain how these subjective statements establish medical equivalency at step three or require new or different restrictions at step four. *Plaintiff's Moving Brief*, ECF No. 21, p. 22 n.9; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more

16

than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").  Notably, when crafting the RFC and considering Plaintiff's condition and daily activities, the ALJ acknowledged that Plaintiff has difficulty taking care of herself and with ambulation, and the ALJ accounted for that difficulty in finding an RFC for sedentary work. R. 22–23. Plaintiff's argument, therefore, apparently boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). To the extent that Plaintiff invites the Court to reweigh the evidence, the Court declines to do so. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].");  *cf. Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, the ALJ's consideration of Plaintiff's obesity throughout the sequential evaluation enjoys substantial support in the record.

**B.     RFC**

Plaintiff next argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to provide "individual functional limitations on a function-by-function basis" and failed to explain "how long plaintiff can sit or stand, or how far/long she can walk, or how much she can lift and carry" and instead "simply announces an exertional RFC category[.]" *Plaintiff's Moving Brief*, ECF No. 21, pp. 24–34. Plaintiff also complains that,

17

although the ALJ acknowledged Plaintiff's use of a cane, "the official articulated RFC upon which the denial of benefits is predicated, makes no such acknowledgement" and there is "no finding that she requires a cane for standing or walking or that she retains only one hand while on her feet[,]" rendering the RFC "unsupported by substantial evidence." *Id*. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform sedentary work "except the claimant can perform simple and repetitive tasks and occasional reaching with the upper extremity." R. 19. In making this determination, the ALJ detailed years of record evidence, including Plaintiff's hearing testimony, medical records, and

opinion evidence. R. 19–24. The ALJ specifically explained why the objective evidence, as well as Plaintiff's ability to ambulate and to take care of herself, albeit with some difficulty, established that Plaintiff could perform sedentary work; in making this determination, the ALJ expressly rejected a state agency opinion that Plaintiff could perform light work, as follows:

> Overall, the record shows that despite the claimant's complaints, her condition has remained stable with no worsening and is treated conservatively. The record does not show any hospitalizations or emergency care. While she has some reduced strength in the lower extremities as well as reduced ranges of motion in the spine, knees and ankles, she shows no atrophy, incoordination, deformities or tremors and has maintained intact tone, sensation and reflexes. While she has difficulty with ambulation, she is able to take care of herself independently albeit with some difficulty and travel independently throughout the community to her appointments (Exhibit 3E, hearing testimony). While she reports shoulder pain, there are no clinical findings suggesting any limitations. Examination in February 2017 suggested right elbow pain with some reduced range of motion but there was no instability. The record does not show clinical limitations with the upper extremities. Ultimately, the record supports a determination the claimant is able to perform the sitting, walking/standing and lifting/carrying demands of sedentary work. Additional reaching limitations were provided to account for the claimant's reports of shoulder pain. I also limited the claimant to simple and repetitive work, due to her continued reports of pain. Additional mental limitations were not warranted as treatment records generally indicate the claimant was fully alert, oriented and cooperative, with good insight, intact judgment and intact memory (Exhibits 1F, 2F, 5F, 6F, 8F).

R. 22–23.

> Based on the entire record, I conclude that the evidence fails to support the claimant's assertions of total disability. Despite evidence demonstrating that the claimant has suffered from medically determinable "severe" impairments, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. Specifically, I find that the claimant retains the residual functional capacity to perform the exertional demands of sedentary work (20 CFR 404.1567 and 416.967), along with the additional [limitations] outlined above in the residual functional capacity.

R. 23.

> As for the findings of DDS, the DDS state agency consultant determined the claimant is able to perform work at the light level of exertion, with a limitation to no climbing of ladders/ropes/scaffolds, occasional climbing of ramps/stairs,

kneeling and crawling and frequent balancing, stooping and crouching (Exhibits 2A, 4A). These findings were affirmed on reconsideration (Exhibits 6A, 8A).

I find the claimant is limited to the demands of sedentary work, due to persistent pain in the bilateral knees and feet as well as her morbid obesity. Objective testing has shown tendonitis and bursitis in the feet, osteoarthritis in the knees as well as prior surgery on the right knee. The claimant has also been ambulating with a cane since her knee surgery in 2015. Clinical findings have shown pain with range of motion, crepitus and weakness in the knees and ankles. Her conditions are aggravated by morbid obesity. Ultimately, the record shows the claimant has reduced ability to perform prolonged standing/walking. DDS also did not account for the claimant's continued reports of pain, which affect her concentration and ability to perform complex tasks.

R. 23–24. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, contends that substantial evidence does not support the RFC determination because the ALJ failed to provide a function-by-function analysis and explain how long Plaintiff can sit, stand, walk, lift, and carry. *Plaintiff's Moving Brief*, ECF No. 21, pp. 24–34. The Court is not persuaded that this issue requires remand. While an ALJ's RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[,]" SSR 96-8p, an ALJ is not required "to use particular language or adhere to a particular format in conducting [that] analysis[;]" instead, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec.*, No. 1:18-CV-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.") (citations omitted). In this case, the ALJ

detailed the record evidence in a narrative discussion throughout several single-spaced pages, considered Plaintiff's exertional and non-exertional functional limitations flowing from her impairments, and crafted an RFC that reflected those limitations. R. 19−24. Notably, the ALJ's discussion detailed above reflects that, when explaining why Plaintiff was capable of performing sedentary work, the ALJ implicitly concluded that Plaintiff could sit for up to six hours in an eight-hour workday and stand/walk for up to two hours in an eight-hour workday. R. 22–24; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10; *Granados v. Comm'r of Soc. Sec.*, No. CIV.A. 13-781 JLL, 2014 WL 60054, at *10 n.8, 9 (D.N.J. Jan. 7, 2014) ("Implicit in the ALJ's finding that Plaintiff could perform sedentary work is the finding that Plaintiff could sit for six hours in an eight-hour workday. . . . [and] that Plaintiff could stand for two hours in an eight-hour workday.") (citing SSR 96–9p). Moreover, and based on this record, this Court also concludes that the ALJ complied with the requirements of SSR 96-8p. *See Cosme*, 845 F. App'x at 134 ("Prior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it. Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function assessment prior to his RFC determination."); *Jones v*, 364 F.3d at 505; *Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases).

Plaintiff goes on to complain that, although the ALJ's decision acknowledges Plaintiff's use of a cane to stand and walk, neither the RFC found by the ALJ nor the hypothetical questions

posed to the vocational expert includes a limitation for a cane, rendering the ALJ's decision

unsupportable. *Plaintiff's Moving Brief*, ECF No. 21, pp. 30–34 (citations omitted). This Court

disagrees. "[An] ALJ need not account for use of a hand-held assistive device in an RFC

assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517, 2023

WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). SSR 96-9p addresses the need to find that such a

device is "medically required":

> **Medically required hand-held assistive device**: To find that a hand-held assistive
> device is medically required, *there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or standing, and describing
> the circumstances for which it is needed (i.e., whether all the time, periodically, or
> only in certain situations; distance and terrain; and any other relevant
> information).* The adjudicator must always consider the particular facts of a case.
> For example, if a medically required hand-held assistive device is needed only for
> prolonged ambulation, walking on uneven terrain, or ascending or descending
> slopes, the unskilled sedentary occupational base will not ordinarily be significantly
> eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying
> of light objects such as ledgers and files and a maximum lifting capacity for only
> 10 pounds, an individual who uses a medically required hand-held assistive device
> in one hand may still have the ability to perform the minimal lifting and carrying
> requirements of many sedentary unskilled occupations with the other hand. For
> example, an individual who must use a hand-held assistive device to aid in walking
> or standing because of an impairment that affects one lower extremity (e.g., an
> unstable knee), or to reduce pain when walking, who is limited to sedentary work
> because of the impairment affecting the lower extremity, and who has no other
> functional limitations or restrictions may still have the ability to make an
> adjustment to sedentary work that exists in significant numbers. On the other hand,
> the occupational base for an individual who must use such a device for balance
> because of significant involvement of both lower extremities (e.g., because of a
> neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource
> in order to make a judgment regarding the individual's ability to make an adjustment
> to other work.

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (emphasis added). "A claimant's

testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL

2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze*, 53 F. Appx at 222 ("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). "However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device." *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023) (quoting *Steward v. Comm'r of Soc. Sec.*, No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)). "[T]he failure to do so may require a remand." *Id.* (citations omitted).

In the present case, the ALJ noted several times that the record reflects that Plaintiff uses a cane for ambulation, R. 18, 20–23 (citations omitted), and also noted Plaintiff's testimony that her "doctor prescribed her a cane[,]" R. 20. However, Plaintiff does not actually point to—and the Court cannot find in the record—a prescription for a cane, let alone a prescription containing a description of the cane's medical necessity. *See generally Plaintiff's Moving Brief*, ECF No. 21. As set forth above, Plaintiff's testimony that a physician prescribed a cane to her "is not enough to meet" her burden under SSR 96-9p. *Mundo*, 2023 WL 2632810, at *5. Accordingly, any error in the ALJ's failure to explain why he did not include a cane in the RFC is harmless error because Plaintiff has not shown that her cane was medically required under SSR 96-9p. *Id.*; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he

party seeking reversal normally must explain why the erroneous ruling caused harm.");

*Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not

affect the outcome of the case").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record.

V.     **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: June 8, 2023                          *s/Norah McCann King*
                                            NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE